

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

WILL WILSON
ATTORNEY GENERAL

September 14, 1959

Honorable Henry Wade
District Attorney
Records Building
Dallas 2, Texas

Opinion No. WW-704

Re: Provisions of House Bill 591,
Acts of the 56th Legislature,
Regular Session, 1959, Chap-
ter 137, page 234, regarding
Joint Board of Park Commis-
sioners.

Dear Mr. Wade:

You have requested our opinion on the following ques-
tions:

"1. Under what circumstances, if any, do
the provisions of H.B. 591 permit or require Dallas
County to finance any of the operations contemplated
by the Bill from tax or other revenues of the county?

"2. Under what circumstances, if any, and to
what extent are the laws governing the duties and
actions of the County Auditor of Dallas County appli-
cable to the operations contemplated by H.B. 591?

"3. Are the costs of services rendered by the
Criminal District Attorney of Dallas County provided
for in Section 6 of H.B. 591 reimbursable to the
county?

"4. Should the election provided for in Section
12(h) of H.B. 591 be called by the Commissioners'
Court of each county creating by Resolution the Joint
Board of Park Commissioners, or should such election
be called by the Joint Board; or should such election
be called by both Commissioners' Courts of such coun-
ties and the Joint Board of Park Commissioners?"

Our opinion expressed herein is limited to the specific
questions asked. Since you do not raise the constitutionality
of House Bill 591 we do not here pass on constitutional ques-
tions and specifically reserve them.

In connection with your first question, we note that
Sec. 12(a) of House Bill 591 provides:

"For the purpose of providing funds to acquire, improve, equip and repair such park or parks, or for the acquisition by construction or otherwise of any facilities to be used in or connected with or incident to any such park or parks, or for any one or more of such purposes, the Joint Board shall have the power from time to time and is hereby authorized by resolution (hereinafter sometimes called the 'Resolution'), to procure the issuance of revenue bonds, . . ."

Sec. 12(c) provides:

"The bonds may be secured by a pledge of all or a part of the Net Revenues (as defined in Section 12(d) hereof) from the operation of such park or parks, or the facilities thereof and incident thereto, . . ."

Sec. 12(d) provides:

"The term 'Net Revenues' as used in this Section and in this Act shall mean the gross revenues from the operation of the park or the parks, and the facilities thereof, leases, agreements and contracts, and incidents thereto, or from any one or more thereof, whose revenues shall have been thus pledged, after deduction of the necessary expenses as defined in Section 14 hereof."

Sec. 12(f) provides:

". . . Such bonds shall never be reckoned in determining the power of either of the two (2) such counties to incur obligations payable from taxation. . . ."

Sec. 14(a) provides:

"The expense of operation and maintenance of facilites whose revenues are pledged to the payment of the bonds shall always be a first lien on and charge against the income thereof. . . ."

The last sentence of Sec. 17 provides:

". . . It shall be the duty of the Joint
Board to so operate said park or parks that there
will be available from the gross revenues received
from the operation of park facilities whose reven-
ues are pledged to the payment of Revenue Bonds
money sufficient to pay the operation and mainten-
ance expenses of said facilities without the appro-
priation of tax money for the expense of maintain-
ing and operating such facilities."

In your letter you suggested that it was the legislative
intent that Dallas County is not required to finance operation
and maintenance from tax or other revenues.  We agree with your
conclusion insofar as it applies to the operation and mainten-
ance expenses of facilities whose revenues are pledged to the
payment of Revenue Bonds, and it is our opinion that Dallas
County would not be required to finance the operation and
maintenance of such facilities from tax money.

Sec. 17 provides:

"Before July 1st of each year the Joint Board
shall prepare and not later than July 1st, file
with the County Judge of each of the two (2) such
counties, a complete statement showing the financial
status of the Joint Board, its properties, funds
and indebtedness.  The statement shall be so pre-
pared as to show separately all information con-
cerning the Revenue Bonds, the income from pledged
facilities, and expenditures of such revenues, and
all information concerning moneys which may have
been appropriated to the Joint Board by the Commis-
sioners Court of each of the two (2) such counties
for operational and maintenance expenses.  Concur-
rently with the filing of such statement, the Joint
Board shall file with the County Judge of each of
the two (2) such counties a proposed budget of its
needs for the next succeeding calendar year.  After
approval of such budget, the County Judge of each
of the two (2) such counties shall incorporate one
half ($\frac{1}{2}$) of the total amount of the same in the
county budget. . . ."

The statement filed with the County Judges would reflect
the financial status of the Joint Board and should indicate
whether the needs shown in the proposed budget could be met in
whole or in part with any funds of the Joint Board such as park
revenues, grants or gratuities.  If the Joint Board included in

its proposed budget items, such as operation and maintenance expenses of facilities other than those the income from which was pledged to the payment of Revenue Bonds, or items such as expenses specified in Sections 3, 4 and 6, then one-half the total amount of the same should be incorporated in the tentative budget of each county. It is our opinion that the counties would be permitted to finance these items out of tax and other revenues.

In reaching this conclusion, we are guided by the principle which requires that a statute be construed in such a manner as to make it workable, effective and operative. The courts will not interpret laws so as to nullify or impair them, when their language reasonably admits of a different meaning. Spears v. City of San Antonio, 110 Tex. 618, 223 S.W. 166, affirming 206 S.W. 703. It seems likely that the Joint Board would be without income from park facilities for a period of time until it had completed certain initial plans, acquired park facilities and commenced receiving revenue therefrom. To permit the counties to create the Joint Board and prevent them from giving it necessary financial assistance would render the statute inoperative and defeat the legislative intent. See Robinson v. Varnell, 16 Tex. 382, 390. It is possible that park facilities will be transferred to the Joint Board which have no revenues and which have been operated and maintained by the counties with tax money and other revenues. It is inconceivable that the Legislature intended that such parks should be allowed to deteriorate because the Joint Board lacked funds to operate and maintain them.

We are not unmindful of the possibility that a Joint Board could operate solely on income from park facilities, and the "grants and gratuities" mentioned in Sec. 19, but we find nothing in the Act which suggests a legislative intent that the Joint Board operate solely on such funds. The proposed budget of the Joint Board included in both counties' tentative budgets would be subject to the budgetary procedure in effect in both counties and it would be included in the counties' budgets only if it were approved by the Commissioners' Courts. Conceivably, certain items could be provided for out of Park Board funds and other items might be provided for out of tax monies of the counties.

In our answers to the foregoing question and the one following, we do not propose to discuss all conceivable "circumstances" as such would require an extensive treatise. Such would not be in accordance with our opinion procedure. We have attempted to cover the particular circumstances discussed

in your letter.  In the event that you have further questions, we shall be happy to give you our opinion thereon.

With reference to your second question, you quote the following from Section 17 of House Bill 591:

"The Joint Board shall file with the County Judge of each of the two counties a proposed budget of its needs for the next succeeding calendar year.  After approval of such budget, the County Judge of each of the two counties shall incorporate one-half of the total amount of the same in the county budget to be prepared by him during the month of July of each year.  As a part of each of the two such counties' tentative budgets, the items thus certified by the Joint Board shall be subject to the procedure for the county budget of each of the two such counties prescribed by Chapter 206, Acts of the Regular Session of the 42nd Legislature, Section 10 to 13, both inclusive, carried forward in Vernon's Annotated Statutes as Articles 689a-9 to 689a-12."
(Emphasis added by you.)

Upon referring to Section 12 of the above-referenced statute (Article 689a-11, Vernon's Annotated Civil Statutes) we find the following provision:

". . . Provided, however, that in all counties of this State containing a population in excess of three hundred and fifty thousand (350,000), according to the last preceding United States census, the provisions hereof shall not apply to the making of such county budgets, and in such counties all matters pertaining to the county budget shall be governed by existing law."

It is our opinion, therefore, that the laws governing the duties and actions of the county auditor of Dallas County, in preparing the county's tentative budget, are applicable to the proposed budget of the Joint Board contemplated by House Bill 591.  To give the statutes under consideration any other construction would result in purposeless preparation by the County Judges of budgets in counties where that duty is imposed by law on the county auditor.  It is our opinion that the proposed budget filed by the Joint Board with the County Judge should be incorporated (to the extent of one-half of the total amount thereof) in the tentative county budget to be prepared by the county auditor.

In connection with your third question you quoted from Section 6 of House Bill 591 as follows:

"The Joint Board may employ secretaries, stenographers, bookkeepers, accountants, technical experts and such other agents and employees, permanent or temporary, as it may require and shall determine their qualifications, duties, and compensation.  In addition, the Joint Board may also employ and compensate a manager for any Park or Parks and may give him full authority in the management and operation of the Park or Parks, subject only to the direction and orders of the Joint Park Board.  The County Attorney or Criminal District Attorney of either of the two such counties shall perform all the necessary legal services for such joint Board of Park Commissioners."  (Emphasis added by you.)

While this section spells out the authority of the Joint Board to employ and compensate employees and administrative personnel, it does not provide for compensation for the County Attorney or Criminal District Attorney.  Neither do we find elsewhere in the Act any suggestion that the counties are to be reimbursed for services rendered by the County Attorney or the Criminal District Attorney.  It is our opinion, therefore, that the costs of services rendered by the Criminal District Attorney of Dallas County provided for in Section 6 of House Bill 591 is not reimbursable to the counties.

With reference to your fourth question, Sec. 12(h) provides:

". . . Which election shall be held and notice thereof given as is provided in Chapter 1, Title 22, Revised Civil Statutes of Texas, 1925, as amended.  . . ."

The reference Act does not specify whether the Commissioners' Courts or the Joint Board shall call the election.  However, Article 702 thereof contains the following language:

"In all cases when the governing body of a county, city or town shall order an election for the issuance of the bonds of the county, city or town or of any political sub-division

or defined district of a county, city or town, such body shall at the same time submit the question of whether or not a tax shall be levied.   . . ."

In the absence of our being able to find any legislative pronouncement on this question, we are of the opinion that, in adopting the foregoing, it was the legislative intent that the election under consideration is to be called by the governing bodies of the counties, that is, the Commissioners' Courts.

We wish to repeat that we reserve all questions of constitutionality.  No doubt these questions will be presented in due course when bonds are presented for approval.

### S U M M A R Y

Dallas County may finance certain operations of the Joint Board out of tax money.  The county auditor of Dallas County should include one-half of the proposed budget of the Joint Board in the tentative budget of Dallas County.  The cost of services rendered by the Criminal District Attorney of Dallas County for the Joint Board are not reimbursable to Dallas County.  The election provided for in Sec. 12(h) of House Bill 591 should be called by the Commissioners' Court of each county.

Yours very truly,

WILL WILSON
Attorney General of Texas

By
Jay Howell
Assistant

JH:zt

APPROVED
OPINION COMMITTEE
Geo. P. Blackburn, Chairman
Leonard Passmore
C.Dean Davis
Howard Mays
Elmer McVey
REVIEWED FOR THE ATTORNEY GENERAL
BY:  W.V.Geppert